# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

ERIC HAWKINS                                                                                PLAINTIFF

V.                                                                      NO. 4:16-CV-98-DMB-JMV

NICHOLAS WALSH and CITY OF
CLARKSDALE, MISSISSIPPI                                                                   DEFENDANTS

## ORDER

This civil rights action is before the Court on the multiple motions in limine filed by the parties.

## I
## Procedural History

On May 18, 2016, Eric Hawkins filed a complaint against Nicholas Walsh and the City of Clarksdale, Mississippi, seeking to recover for an alleged use of excessive force against him by Walsh, a police officer with the City of Clarksdale. Doc. #1. Specifically, Hawkins alleges that he was a passenger in a car stopped by Walsh and that he exited the car during the traffic stop, began to run, and was shot by Walsh. Walsh, for his part, claims that he shot Hawkins after Hawkins exited the car with a rifle.

No party filed a dispositive motion. However, on February 23, 2018, Hawkins filed six motions in limine. Doc. #71; Doc. #73; Doc. #75; Doc. #77; Doc. #79; Doc. #81. The same day, Walsh and the City filed a joint motion in limine. Doc. #68. Hawkins filed a seventh motion in limine on March 2, 2018. Doc. #84.

## II
## Motion in Limine Standard

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on

the admissibility and relevance of certain forecasted evidence. Evidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds." *Harkness v. Bauhaus U.S.A., Inc.*, No. 3:13-cv-129, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015) (quotation marks and citations omitted).

**III**
**Defendants' Motion in Limine and Hawkins' Seventh Motion in Limine**

In their motion in limine, the defendants seek to exclude evidence related to Hawkins' acquittal of the crime of aggravated assault during the incident underlying Hawkins' suit. Doc. #68. Relatedly, Hawkins' seventh motion in limine seeks to exclude evidence related to criminal charges brought against him stemming from the incident.[1] Doc. #84.

After the filing of these motions, the defendants filed a document representing that the parties:

> have reached an agreement … regarding their First Motion in Limine and Plaintiff's Seventh Motion in Limine. The parties will stipulate not to reference any criminal charges and/or the results of the charges, including the results of plaintiff's criminal trial. The parties have agreed to redact any references to criminal investigation, criminal charges, or criminal trial in the Mississippi Bureau of Investigation Report. This stipulation will include the agreement to redact the second half of Peter Clinton's recommendation that the plaintiff or the other vehicle occupants should be charged with crimes arising out of the incident.

Doc. #106.

Based on this representation, both motions in limine will be denied as moot.

---

[1] Hawkins' seventh motion in limine, which was filed after the deadline for motions in limine and without leave of the Court, states that "[i]n light of Defendants' motion in limine, Plaintiff has filed a seventh motion in limine requesting exclusion of any evidence of a criminal investigation, charge, trial, or proceeding against Plaintiff. If that motion is granted, Plaintiff stipulates that evidence of the acquittal should be excluded as well. If that motion is not granted, Plaintiff requests that evidence of the acquittal be allowed for the purpose of allowing the jury to be informed rather than confused or misled."

# IV
# Hawkins' First Motion in Limine

In his first motion in limine ("First Motion"), Hawkins moves to exclude as irrelevant and unduly prejudicial any evidence related to his criminal record, which includes charges of disorderly conduct, false identification, failure to pay fines, and a variety of traffic offenses. Doc. #71; Doc. #72.

As a general rule, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. In their response, the defendants argue that Hawkins' criminal history is admissible to show: (1) the falsity of Hawkins' claim that he ran because he was scared; (2) the falsity of Hawkins' statements regarding the severity of his damages; and (3) as impeachment evidence under Federal Rule of Evidence 609.

### A. Reason for Running

The defendants argue:

> Plaintiff claimed to Colonel Clinton of the MBI that he did not know why he ran from Officer Walsh with the weapon, and in his deposition, he explained that he ran because he was "scared" but that he would not have run in hindsight. In short, Plaintiff claims that his running was a mistake. However, Plaintiff's criminal convictions prove the contrary. Prior to this incident, Plaintiff also ran from a law enforcement officer who attempted to pull him over, after Plaintiff had presented this same officer with false information by claiming to be his brother to avoid arrest for outstanding warrants. This incident resulted in Plaintiff being tased by the officer. This incident shows, contrary to Plaintiff's testimony, that his running from the law enforcement officer was not inadvertent or a mistake.

Doc. #96 at 2 (emphasis and internal citations omitted).

"To state a Fourth Amendment excessive force claim, [a] plaintiff[] must show that [he

was] seized and that [he] suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force was objectively unreasonable." *Davila v. United States*, 713 F.3d 248, 259 (5th Cir. 2013) (original alterations and quotation marks omitted). This inquiry is "fact-specific" and must "be made from the perspective of an objectively reasonable officer at the scene, rather than in hindsight." *Id*. Put differently, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them …." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Because the excessive force inquiry is an objective one, a plaintiff's subjective reason for fleeing from an officer is irrelevant. *See Molina v. City of Visalia*, No. 1:13-cv-1991, 2016 WL 8730723, at *4 (E.D. Cal. Sept. 16, 2016) ("[T]he subjective state-of-mind and any motivation for fleeing on the part of Maduena, Molina, and the other passengers of the vehicle are not at issue in this action and are not relevant to a determination of the defendants' liability because officers Collins, Roberts, and Alfano were unaware of them."). Accordingly, Hawkins' reason for running, which was indisputably unknown to Walsh, is irrelevant to the excessive force inquiry and properly excluded. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

### B. Severity of Damages

The defendants argue:

> While Plaintiff was purportedly recovering from his injuries in Robinsonville, Mississippi at his mother's house, Plaintiff was arrested on November 3, 2013 and was subsequently convicted for presenting false information. This conviction shows that Plaintiff was riding around in Clarksdale and could not have been recovering from his injuries…. The Court should allow Municipal Defendants to pre[s]ent this evidence of Plaintiff's whereabouts and health which go directly to his damages.

Doc. #96 at 2.

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if

4

its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "[O]nly unfair prejudice, substantially outweighing probative value … permits exclusion of relevant matter under Rule 403." *United States v. Barnes*, 803 F.3d 209, 221 (5th Cir. 2015) (emphasis omitted). Of relevance here, "[p]robative value may be calculated by comparing evidentiary alternatives." *United States v. Perez-Solis*, 709 F.3d 453, 465 (5th Cir. 2013) (quotation marks omitted).

First, to the extent the defendants remain free to inquire about Hawkins' specific activities following his injuries, the probative value of the relevant conviction (which would be offered to show Hawkins' activities) as it relates to Hawkins' claimed damages is very small.[2] Furthermore, given the credibility questions at issue in this case, evidence that Hawkins was convicted for making a false statement would be very prejudicial. *See Andrews v. Seales*, 881 F.Supp.2d 671, 674 (E.D. Pa. 2012) (convictions of false statements prejudicial in excessive force action). Accordingly, while the Court agrees that Hawkins' activities after the shooting (such as riding around in a car) are relevant to the severity of his injuries, and thus the extent of his damages, admission of the November 3, 2013, conviction for this purpose would be inadmissible as unfairly prejudicial under Federal Rule of Evidence 403.

### C. Impeachment Evidence

The defendants submit that Hawkins has twice been charged for presenting false information to a law enforcement officer, has been convicted for this crime once, and that his "charge and conviction" are admissible under Federal Rule of Evidence 609. Federal Rule of

---

[2] To the extent Hawkins gives answers inconsistent with his conviction, the conviction would likely be admissible as impeachment evidence.

Evidence 609(a) allows a party to "attack[] a witness's character for truthfulness by evidence of a criminal conviction."  If the conviction is for a crime punishable "in the convicting jurisdiction … by death or by imprisonment for more than one year," the conviction is admissible "subject to Rule 403."  Fed. R. Evid. 609(a)(1).  If, however, the conviction is for a crime for which "the court can readily determine that establishing the elements of the crime required proving--or the witness's admitting--a dishonest act or false statement," the conviction is admissible without regard to Rule 403.

Under Mississippi law, the crime of false identification is making or causing "to be made any false statement or representation as to [a] person's identity … to a law enforcement officer in the course of the officer's duties with the intent to mislead …."  Miss. Code Ann. § 97-9-79.  Because from these elements, the Court can readily determine that the elements of the crime involve a dishonest act or statement, the conviction is admissible under Rule 609.

### D.  Summary

Hawkins' First Motion will be denied to the extent his conviction for false identification is admissible under Federal Rule of Evidence 609.  The First Motion will be granted in all other respects.

### V
### Hawkins' Second Motion in Limine

Hawkins' second motion in limine ("Second Motion") seeks to exclude "evidence of the criminal record or gang affiliation or reputation of any person in the car in which Plaintiff was a passenger."  Doc. #73.  Hawkins argues that such evidence is both irrelevant and unduly prejudicial. *Id*. at 1.  The defendants respond that "evidence that Plaintiff was riding in a vehicle with gang members guns and ammunition is relevant to whether he exited the car with a gun and whether it was reasonable for Officer Walsh to fire his weapon at Plaintiff."  Doc. #88 at 2.

6

While a known gang affiliation may, in some circumstances, be relevant as a defense to a § 1983 claim, such evidence is properly excluded as irrelevant and unduly prejudicial where there is no evidence the arresting officer knew of such affiliation. *See Anderson v. City of Chicago*, No. 09-cv-2311, 2010 WL 4811937, at *2 (N.D. Ill. Nov. 19, 2010) (granting motion in limine related to gang affiliation where "nowhere in Defendants' pleadings does it indicate that the Defendant Officers knew anything about these two individuals' alleged gang affiliations before they responded to the 'shots fired' incident, before they arrested Plaintiffs, [or] before the allegations of excessive force"). Here, there is no evidence that Walsh knew of the criminal history or gang affiliations of any passenger in the car. In the absence of such evidence, the Second Motion will be granted.

## VI
## Hawkins' Third and Fourth Motions in Limine

In his third motion in limine ("Third Motion"), Hawkins seeks to exclude evidence that in the car in which he was riding, authorities "found a CD with the words 'Trigger Finger' written on it, and a handgun." Doc. #76 at 1. Hawkins argues this evidence should be excluded as irrelevant and unfairly prejudicial. The defendants respond:

> the evidence is clearly relevant to why the car in which plaintiff was riding was driving slowly through a neighborhood at night with its lights off when plaintiff and others jumped out and ran. Plaintiff is claiming he did not jump out the car with the gun but a gun was found in the backseat of the Taurus directly beside where Plaintiff had been sitting. Evidence of a gun and a CD labeled with a title suggesting gun violence is bad for Plaintiff. However, the Court cannot exclude it for this reason.

Doc. #90 at 1. Put differently, the defendants argue that the evidence is relevant to show that the occupants of the car were on the way to do something violent, if not illegal. This proffered purpose relates to Hawkins' fourth motion in limine ("Fourth Motion"), which seeks to exclude as irrelevant and unfairly prejudicial all evidence that occupants were on the way to a drive-by

7

shooting. Doc. #77. In his Fourth Motion, Hawkins also argues that some of the evidence related to the alleged drive by shooting, specifically certain statements made to officers by "people" subsequent to the stop, are inadmissible hearsay. Doc. #78 at 1–2.

The defendants do not respond to the hearsay argument but contend the fact "[t]hat the occupants in the vehicle intended to shoot someone makes it more probable that Plaintiff jumped out of the vehicle with a loaded weapon pointed in Officer Walsh's direction." Doc. #92 at 2. They also argue that the evidence is relevant to rebut Hawkins' claim that he thought he was on the way to a basketball game and entered the wrong car.

### A. Hearsay

Rule 801 of the Federal Rules of Evidence defines hearsay as a "statement that … the declarant does not make while testifying at the current trial or hearing … and … a party offers in evidence to prove the truth of the matter asserted in the statement." "Once a party has properly objected to evidence as inadmissible hearsay, the burden shifts to the proponent of the evidence to show, by a preponderance of the evidence, that the evidence falls within an exclusion or exception to the hearsay rule and was therefore admissible." *Loomis v. Starkville Miss. Pub. Sch. Dist.*, 150 F.Supp.3d 730, 742–43 (N.D. Miss. 2015) (quotation marks omitted). Because the defendants have failed to respond to Hawkins' proper hearsay exception regarding the statements made by unspecified "people," the Fourth Motion will be granted to the extent it seeks exclusion of such statements.

### B. Intent to Participate in Shooting

The admissibility of the broader category of evidence – that the occupants of the car intended to shoot someone – is less clear. As quoted above, the defendants argue "[t]hat the occupants in the vehicle intended to shoot someone makes it more probable that Plaintiff jumped

out of the vehicle with a loaded weapon pointed in Officer Walsh's direction." Doc. #92 at 2. To the extent this proffer seeks to argue that because Hawkins was a violent person, it is more likely that he acted aggressively toward Walsh, the evidence must be rejected as impermissible character evidence. *See* Fed R. Evid. 404(a) (prohibiting introduction of character trait to show conformity with trait). However, to the extent the defendants argue that the participation of the car's occupants in criminal activity provided Hawkins motive to resist arrest, the evidence could be admissible, with a sufficient proffer and subject to a Rule 403 balancing. *See Hernandez v. Cepeda*, 860 F.2d 260, 265 (7th Cir. 1988) ("[E]vidence of the charges on which Hernandez was arrested at the time of the alleged civil rights violation was admissible for the purpose of demonstrating Hernandez's motive to resist arrest.").[3] The parties have not clearly argued the 403 implications of the motive proffer and the Court declines to partake in such an inquiry at this time. Accordingly, the Court cannot conclude, at this time, that the evidence of the intent of the car's occupants to participate in a drive-by shooting is inadmissible on all possible grounds. Therefore, the Third Motion and Fourth Motion will be denied to the extent they seek exclusion of such evidence.[4]

---

[3] *See also Doornbos v. City of Chicago*, 868 F.3d 572, 580 (7th Cir. 2017) ("[E]vidence of Doornbos's marijuana was relevant because it could, at least arguably, support the officers' version of events by giving Doornbos a motive to try to flee and then to resist a stop, frisk, and/or arrest."); *Greene v. Distelhorst*, 116 F.3d 1480 (Table), 1997 WL 351298, at *3 (6th Cir. 1997) (unpublished) ("[E]vidence of Greene's conduct leading to his arrest on July 16, 1993, and the convictions stemming from that arrest were admissible to provide the jury with a full account of the events giving rise to Greene's present claims and to demonstrate Greene's motive to run, hide, and resist arrest."); *Daniels v. Loizzo*, 986 F. Supp. 245, 248 (S.D.N.Y. 1997) (evidence of unknown outstanding warrants relevant to show motive to resist); *Jones v. Police Officer Omarlo Phillips*, No. 15-cv-51, 2017 WL 1292376, at *4 (E.D. Wisc. Apr. 6, 2017) ("[W]hat arguably gave Jones a motive for violent resistance on October 28, 2014, was the fact that Jones possessed drugs and was out on bail."); *McAtee v. Warkentin*, No. 3:05-cv-104, 2007 WL 4570834, at *3 (S.D. Iowa Dec. 31, 2017) ("If the defendants show that the decedent was on supervision for a drug offense and that he was committing drug and gun offenses at the time of Chief Warkentin's pursuit, these facts could be relevant to the decedent's alleged motive to resist apprehension and flee.").

[4] Insofar as it is unclear whether Hawkins intends to raise why he was in the car, the Court declines to engage in a hypothetical inquiry as to whether the evidence would be proper on rebuttal.

# VII
# Hawkins' Fifth Motion in Limine

Hawkins' fifth motion in limine ("Fifth Motion") seeks to exclude evidence that, following the incident, Hawkins was offered an opportunity to take a polygraph but refused. The defendants "concede that the weight of authority favors excluding refusals to take polygraph tests under Rule 403" but argue that the evidence is nonetheless admissible here to "to show Plaintiff is not credible." Doc. #98 at 1–2.

While the Court appreciates the defendants' candor, case law is mixed on the admissibility of refusals to take polygraphs. *Compare DeVries v. St. Paul Fire & Marine Ins. Co.*, 716 F.2d 939, 944–46 (1st Cir. 1983) ("[E]vidence of a person's refusal to take a polygraph test has specifically been held inadmissible.") *with United States v. Resnick*, 823 F.3d 888, 897 (7th Cir. 2016) (affirming district court's admission of evidence of refusal to take polygraph). The Fifth Circuit, for its part, appears never to have addressed the issue. However, it has held that admission of polygraph results and evidence of a party's offer to submit to a polygraph are both subject to a Rule 403 balancing inquiry. *United States v. Posado*, 57 F.3d 428, 435 (5th Cir. 1995) (polygraph results); *United States v. Leyva*, 564 F. App'x 76, 77 (5th Cir. 2014) (offer to take polygraph). Based on the Fifth Circuit's use of Rule 403 to address the admissibility of polygraph-related evidence, the Court concludes that the admissibility of a refusal to take a polygraph depends on a Rule 403 balancing inquiry, which measures the probative value of the refusal against the danger of unfair prejudice, confusion, misleading the jury, undue delay, wasting time, and needlessly presenting cumulative evidence.

In assessing the probative value of Hawkins' refusal to take the polygraph, the defendants seem to argue that Hawkins' refusal suggests that his proffered version of events is untrue. The Sixth Circuit, addressing the same argument, has recognized a "marginal" relevance to a refusal

to take a polygraph but has noted that "[g]iven the general skepticism that pervades the scientific community concerning the reliability of polygraph examination, an individual's refusal to submit to a polygraph test may be more probative of skepticism than lack of credibility." *Wolfel v. Holbrook*, 823 F.2d 970, 974 (6th Cir. 1987). In the same opinion, the Sixth Circuit held that the refusal was inadmissible to prove lack of credibility because the "marginal" probative value was outweighed by the fact that "an individual's refusal to volunteer for polygraph testing is likely to create a highly prejudicial inference that the results of the test would have been unfavorable …." *Id*. at 974–75. This Court agrees with this holding and concludes that where, as here, a party seeks to introduce a refusal to take a polygraph to call into question a party's credibility, such evidence is inadmissible under Rule 403.[5] Accordingly, Hawkins' Fifth Motion will be granted.

## VIII
## Hawkins' Sixth Motion in Limine

Hawkins' sixth motion in limine ("Sixth Motion") seeks to exclude numerous portions of a Mississippi Bureau of Investigation Report on the underlying incident prepared by Lieutenant Peter T. Clinton. Doc. #81.

### A. Clinton's Opinions Generally

Hawkins first objects to the opinions in the report on the grounds that Clinton was never qualified as an expert witness and because his opinions relate to the ultimate issue in this case, they should be excluded under Federal Rule of Evidence 701. The defendants respond that Clinton, who initially responded to the scene of the shooting, "may offer his opinions under Rule 701." Doc. #94 at 2.

---

[5] This holding is consistent with the opinions of other courts which have admitted refusals to take polygraphs where the refusals were offered for additional evidentiary purposes. *See, e.g.*, *Underwood v. Colonial Penn Ins. Co.*, 888 F.2d 588, 591 (8th Cir. 1989) (refusal to take polygraph admissible as impeachment evidence and evidence of motive); *Hisel v. City Clarksville*, No. 3:04-924, 2007 WL 869722, at *1–2 (M.D Tenn. Mar. 20, 2007) (agreement and then subsequent refusal to take polygraph potentially admissible to show reason for delay in investigation).

As an initial matter, Federal Rule of Evidence 704 makes clear that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Accordingly, the fact that Clinton's opinions overlap with an ultimate issue in the case does not necessarily warrant exclusion.

Next, Federal Rule of Evidence 701 provides that a lay witness may offer "testimony in the form of an opinion … that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." The perception requirement of Rule 702 is based on the requirement of Rule 602 that "testimony may be elicited only if it is based on the witness's first-hand knowledge or observations." *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685 (5th Cir. 2003). Because Rule 602 "permits a witness to testify to what he heard unless what he heard is excluded under the hearsay rules," "the firsthand knowledge requirement may be based on the lay witness' perception of otherwise admissible out of court statements." *United States v. Garcia*, 994 F.2d 1499, 1506–07 (10th Cir. 1993) (quotation marks omitted).

Here, the recommendations and opinions included in the report are based on a mix of hearsay and first-hand observations. Under such circumstances, such opinions are properly rejected as violative of the personal-knowledge requirement.[6] *See* 29 FED. PRAC. & PROC. EVID. § 6254 & n.14 (2d ed.) ("[If an] opinion is based, even in part, on matters perceived by other agents and relayed to the witness, [the] opinion may be rejected.").

### B. Evidence of Alleged Conspiracy to Commit Drive-By

Hawkins argues that various pages of the report should be excluded because they contain

---

[6] This is not to say that Clinton may not otherwise offer opinions based on matters within his personal knowledge, such as his observations of the scene and non-hearsay statements.

12

"references to 'conspiracy to commit drive-by,' a prejudicial statement which has been addressed in an earlier motion in limine." Doc. #81 at 1–2. Similarly, Hawkins' objects to the Evidence Recovery Log included in the report (including relevant photographs), which details the contents of the car. Because the Court has declined to exclude at this time evidence of an intent to commit a drive-by shooting, Hawkins' objections regarding the contents of the car and the related issue of the intent of the car's occupants will be overruled.

### C. Hearsay Objections

The Sixth Motion includes numerous hearsay objections to sections of the report. Specifically, it argues: (1) "Pages 8 and 9 contain a narrative which is based entirely upon hearsay[;]" (2) "Page 12 contains hearsay statements from Jessica Washington[;]" (3) "Pages 18-21 contain a self-serving statement of Defendant Walsh which should not be admitted unless it is against Walsh's interest or being used for impeachment[;]" (4) "Pages 30-34 consist entirely of hearsay statements from Jessica Washington[;]" (5) "Pages 36-38 of the report contain hearsay statements of Aki Williams and Sammy Clark[;]" and (6) "The report also contains a second statement by Officer Walsh which is self-serving and should not be admitted unless it is being admitted against his interest or through impeachment." Doc. #82 at 2–3. With the exception to certain statements attributed to Washington and Williams, the defendants do not respond to Hawkins' hearsay objections. Rather, they offer a general response that they "cannot analyze each particular statement … without Plaintiff specifically identifying which ones are arguably hearsay." Doc. #94 at 2.

This Court has previously observed that hearsay objections must be "proper" and that generally "a hearsay objection [which] is conclusory and scant at best … is not properly made and should be summarily overruled." *Loomis*, 150 F.Supp.3d at 743 (quotation marks omitted). In the

same opinion, this Court noted that "[t]he necessity of proper argument is particularly important where the Court questions whether the statements are being offered for the truth of the matter asserted and/or whether they fall within an exception to the hearsay rule." *Id*. (quotation marks omitted).

Here, Hawkins has failed to offer any legal argument for his hearsay objections. However, with the exception of the broad objection to pages 8–9 (which the Court finds improper), Hawkins' objections identify the specific portions of the report to be excluded as hearsay. Furthermore, each objected-to portion is clearly relied on for the truth of the matter asserted[7] and does not fall near an applicable hearsay objection. Under these circumstances, nothing more was required of Hawkins. Accordingly, the Sixth Motion will be granted to the extent it seeks exclusion of the hearsay statements above, with the exception of the narrative on pages eight and nine of the report.

### D. Criminal Information Regarding Clark, Williams, and Thomas

The Sixth Motion seeks to exclude as irrelevant criminal information regarding Sammy Clark, Aki Williams, and Lucky Thomas. The defendants did not argue how such evidence is relevant. In the absence of such argument, the Sixth Motion will be granted to the extent it seeks exclusion of the challenged evidence.

---

[7] The defendants argue that certain:

> statements from Jessica Washington[]regarding her relationship with Sammy Clark are not in the report because Colonel Clinton wanted to show that Washington and Clark were in a relationship. Rather, they are contained in the report to show the identity of the driver of the Taurus. Washington's testimony establishes that Clark had the opportunity to use the vehicle and is proof of the identity of the driver.

Doc. #94 at 2. The defendants further contend that "[t]he same argument would be true of Aki Williams, who was not at the accident scene. Colonel Clinton interviewed these witnesses to determine who the occupants of the vehicle were and what their motive could possibility be considering the loaded weapons and ammo in the car." *Id*. at n.1. To the extent the proposed inferences drawn from the challenged statements rely on the truth of the matters asserted, such arguments are clearly meritless.

### E. Unofficial Transcript of Hawkins Interview

Hawkins objects to the report's inclusion of what amounts to an unofficial transcript of an interview of him conducted by Clinton. Hawkins argues that the summary should be inadmissible because (1) Clinton did not record the interview, as he did with other interviewees; (2) Hawkins was on a pain-killer at the time; (3) Clinton testified in a deposition that Hawkins made a statement which was not reflected in the summary; and (4) the document's "appearance of purported accuracy could easily mislead a juror into believing this was a recorded interview." Doc. #82 at 5.

While less than clear, it appears Hawkins argues that the interview summary is excludable under Rule 403 because it is unreliable and, therefore, its probative value is outweighed by the danger of confusion to the jury. However, "[w]eighing probative value against unfair prejudice under Rule 403 means probative value with respect to a material fact *if the evidence is believed, not the degree the court finds it believable.*" *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1154 (5th Cir. 1981) (emphases added and alterations omitted). Accordingly, the alleged unreliability of the summary does not lessen its probative value for the purpose of conducting a Rule 403 balancing. *Id*. Rather, there can be no serious dispute that the summary of the interview regarding the event at issue carries a very high probative value. Additionally, while the Court shares Hawkins' concern that the summary, on its face, carries the potential to confuse the jury, the Court believes the risk of this confusion is outweighed by the evidence's probative value and, furthermore, can be remedied by counsel during cross-examination and by the Court in a jury instruction. The Sixth Motion will, therefore, be denied to the extent it seeks exclusion of the summary of Hawkins' interview.

### F. Refusal to Take Polygraph

Finally, the Sixth Motion seeks exclusion of a reference to the allegation that Hawkins refused to take a polygraph. For the reasons above, the Sixth Motion will be granted in this regard.

## IX
## Conclusion

Based on the above:

1. The defendants' motion in limine [68] is **DENIED as moot**.

2. Hawkins' first motion in limine [71] is **GRANTED in Part and DENIED in Part**. The motion is DENIED to the extent Hawkins' conviction for false identification is admissible under Federal Rule of Evidence 609. The motion is GRANTED in all other respects.

3. Hawkins' second motion in limine [73] is **GRANTED**.

4. Hawkins' third motion in limine [75] is **DENIED**.

5. Hawkins' fourth motion in limine [77] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent it seeks to exclude certain hearsay statements from "people" that Hawkins' car was on the way to a drive-by shooting. The motion is DENIED in all other respects.

6. Hawkins' fifth motion in limine [79] is **GRANTED**.

7. Hawkins' sixth motion in limine [81] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent it seeks exclusion of Clinton's ultimate opinions, the hearsay statements set forth above, reference to Hawkins' refusal to take a polygraph examination, and criminal information related to Aki Williams, Sammy Clark, and Lucky Thomas. The motion is DENIED in all other respects.

8. Hawkins' seventh motion in limine [84] is **DENIED as moot**.

**SO ORDERED**, this 23rd day of March, 2018.

                                              **/s/Debra M. Brown**
                                              **UNITED STATES DISTRICT JUDGE**